# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

| | |
|---|---|
| MARGARET WILSON, individually and on behalf of a Class of persons similarly situated,<br><br>**Plaintiff,**<br><br>VS.<br><br>**ANTHEM HEALTH PLANS OF KENTUCKY, INC.**<br><br>**Defendant.** | NO. 3:14CV-743-R<br><br>**CLASS ACTION COMPLAINT**<br><br>*ELECTRONICALLY FILED* |

Now comes the Plaintiff, Margaret Wilson, and for her Complaint against the Defendant, Anthem Health Plans of Kentucky, Inc. ("Anthem"), states as follows:

## I. INTRODUCTION

1.  Anthem routinely imposes caps and limits on benefits under its health insurance policies for insureds seeking treatment for Autism Spectrum Disorders ("ASD") in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, *et seq.* ("ERISA") and the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), 42 U.S.C.A. § 300gg-26. Anthem has limited and capped claims for coverage of critical medical services to treat autistic children, including Applied Behavior Analysis ("ABA").

## II. PARTIES

2.  Plaintiff Margaret Wilson is the natural mother of M.W., a minor child. Plaintiff and M.W. are participants under a health benefit plan ("Plan") issued by Anthem. At all times relevant to the matters alleged in this Complaint, Plaintiff and

M.W. were "participants" or "beneficiaries" under the Plan within the meaning of ERISA.

3. Plaintiff is the natural parent and legal guardian of M.W., a minor child, who suffers from ASD. M.W. is insured as a dependent beneficiary under the Plan.

4. Defendant Anthem Health Plans of Kentucky, Inc., is a domestic corporation engaged in the business of insurance and is authorized to issue insurance plans in the Commonwealth of Kentucky. Defendant has its principal offices in Louisville, Kentucky.

5. Anthem has acted, and continues to act, as insurer and third-party claims administrator for various insured plans as well as self-funded employee benefit plans.

6. Anthem is a fiduciary, as defined by ERISA, as it was responsible for determining the eligibility of participants and beneficiaries for benefits under the Plans under 29 U.S.C. § 1002(21)(A).

### III. JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court under 29 U.S.C. § 1131.

8. Venue is proper in this District in that all or a part of the wrongful conduct and transactions described in this Complaint occurred in the Commonwealth of Kentucky, and more specifically, in this District, where Anthem is located and maintains its headquarters and principal place of business.

9. The Court has personal jurisdiction over Anthem.

## IV.  FACTS

**A.  Autism and the treatment of autism.**

10. Autism Spectrum Disorder ("ASD") or autism is a group of complex disorders of brain development. ASD is characterized, in varying degrees, by difficulties in social interaction, verbal and nonverbal communication, and repetitive behaviors.

11. Autism is rooted in very early brain development, but usually manifests itself in children between 2 and 3 years of age.

12. Autism is very prevalent.  The Centers for Disease Control and Prevention (CDC) identify around 1 in 88 American children as on the autism spectrum.  This is a ten-fold increase in prevalence in 40 years.  More children are affected by autism than diabetes, AIDS, cancer, cerebral palsy, cystic fibrosis, muscular dystrophy and Down syndrome, combined.

13. Autism cannot be cured, but it can be treated.  Without proper treatment, autism is a debilitating and oftentimes totally disabling condition, leading people to grow into adulthood without the ability to perform even basic functions and activities of daily living.

14. The most common and recognized method of treating autism is Applied Behavior Analysis or ABA.  ABA is a science that uses behavioral techniques to teach children basic and complex skills.  ABA works by reinforcing appropriate behavior while decreasing or eliminating challenging behavior.  ABA fosters basic skills such as sitting in a chair, waiting, attending, motoric imitation, responding to one's name or simple commands, as well as looking, listening and imitating, and complex skills such as reading, conversing and understanding another person's perspective.  Without these

skills, many diagnosed with autism will experience the debilitating and disabling effects of the disorder.

15. If delivered competently, ABA intervention helps children with autism make meaningful changes in many areas. Changes do not typically occur quickly and most children require intensive and ongoing instruction that builds on their step-by-step progress.

**B.     The Plan covers ASD and ABA therapy, but with limitations.**

16. The Plan insuring Plaintiff includes coverage for ASD.  (The Plan is attached as Exhibit A to this Complaint.)  The Plan states:

> The diagnosis and treatment of Autism Spectrum Disorders for Members ages one (1) through twenty-one (21) is covered. Autism Spectrum Disorders means a physical, mental, or cognitive illness or disorder which includes any of the pervasive development disorders as defined by the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") published by the American Psychiatric Association, including Autistic Disorder, Asperger's Disorder, and Pervasive Developmental Disorder Not Otherwise Specified.

17. The Plan includes coverage for seven categories of care, including psychiatric and psychological care and ABA.

18. The Schedule of Benefits for the Plan includes coverage for Members age 1 through twenty-one.

19. For Members age one through their seventh birthday, the Plan purports to limit coverage to:  "1,000 hours per Benefit Period Network and Non-Network Combined."

20. For Members age seven through twenty-one, the Plan purports to limit coverage to:  "20 hours per month, Network and Non-Network Combined."

21. The Benefit Period is a calendar year.

4

22. The Plan does not provide for annual limits on the dollar amount of medical/surgical benefits, and does not provide for cumulative quantitative treatment limitations (such as annual or lifetime day or visit limits) for medical/surgical benefits.

**C.    The MHPAEA**

23. MHPAEA is a federal law that prevents insurers offering mental health and substance use disorder (MH/SUD) benefits from imposing less favorable benefit limitations on those benefits than are imposed on medical/surgical coverage.

24. MHPAEA originally applied to group health plans and group health insurance coverage, but was amended by the Patient Protection and Affordable Care Act, as amended by the Health Care and Education Reconciliation Act of 2010 (collectively referred to as the "Affordable Care Act") to also apply to individual health insurance coverage. See, 45 C.F.R. § 146.136(f).

25. The Affordable Care Act also applied the MHPAEA to small group plans – which were previously exempt – if mental health and substance use disorder benefits are part of the Essential Health Benefits ("EHB") selected by the state.  So, after the enactment of the Affordable Care Act, an insurer that provides mental health and substance use disorder benefits in its small group policies must comply with the MHPAEA.  45 CFR § 156.115(a)(3).

26. Mental health and substance use disorder benefits are an EHB under federal law and in Kentucky.

27. The agencies responsible for implementing the MHPAEA and the ACA have issued rules for the implementation of the MHPAEA.

28. The Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 were issued on February 2,

2010. *Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008*, 75 FR 5410-01 ("Interim Rules.")

29. The preamble to the Interim Rules state as follows with respect to the interaction of the MHPAEA with state insurance laws:

> The preemption provisions of section 731 of ERISA and section 2723 of the PHS Act (added by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and implemented in 29 CFR 2590.731(a) and 45 CFR 146.143(a)) apply so that the MHPAEA requirements are not to be "construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement" of MHPAEA. The HIPAA conference report indicates that this is intended to be the "narrowest" preemption of State laws. (See House Conf. Rep. No. 104-736, at 205, reprinted in 1996 U.S. Code Cong. & Admin. News 2018.)
>
> A State law, for example, that mandates that an issuer offer a minimum dollar amount of mental health or substance use disorder benefits does not prevent the application of MHPAEA. Nevertheless, an issuer subject to MHPAEA may be required to provide mental health or substance use disorder benefits beyond the State law minimum in order to comply with MHPAEA. Interim Rules, 75 FR 5410-01.

30. The *Final Rules under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008; Technical Amendment to External Review for Multi-State Plan Program* were issued on November 13, 2013. 78 FR 68240-01. ("Final Rules"). The Final Rules similarly express the preemptive reach of the MHPAEA:

> The preemption provisions of section 731 of ERISA and section 2724 of the PHS Act (added by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and implemented in 29 CFR 2590.731 and 45 CFR 146.143(a)) apply so that the MHPAEA requirements are not to be "construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement" of MHPAEA and other

applicable provisions. The HIPAA conference report indicates that this is intended to be the "narrowest" preemption of State laws.

For example, a State law may mandate that an issuer offer coverage for a particular condition or require that an issuer offer a minimum dollar amount of mental health or substance use disorder benefits. (While MHPAEA does not require plans or issuers to offer any mental health benefits, once benefits are offered, for whatever reason (except as previously described related to PHS Act section 2713), MHPAEA applies to the benefits.) These State law provisions do not prevent the application of MHPAEA, and therefore would not be preempted. To the extent the State law mandates that an issuer provide some coverage for any mental health condition or substance use disorder, benefits for that condition or disorder must be provided in parity with medical/surgical benefits under MHPAEA. This means that an issuer subject to MHPAEA may be required to provide mental health or substance use disorder benefits beyond the State law minimum in order to comply with MHPAEA.  Final Rules, 78 FR 68240-01

31. Substantively, the Final Rules provide that the MHPAEA and the ACA prohibit both lifetime and annual limits on the dollar amount of EHB.  78 FR 68240-01, at *68244.  In addition to prohibiting dollar amount limits, the Final Rules also prohibit plans from "applying cumulative financial requirements (such as deductibles or out-of-pocket maximums) or cumulative quantitative treatment limitations (such as annual or lifetime day or visit limits) to mental health or substance use disorder benefits. . . . " Final Rules, 78 FR 68240-01, at *68241.

32. The Kentucky Autism Mandate also prohibits visit limits like those contained in Anthem's plans.  Ky. Rev. Stat. Ann. § 304.17A-142(3).

33. The Plan issued to Plaintiff and Class Members contain cumulative quantitative treatment limitations applicable solely to treatment for ASD in violation of the MHPAEA.

### D. ASD is a "mental health condition."

34. The MHPAEA prohibits the imposition of less favorable benefit limitations for "mental health benefits" than those afforded for medical/surgical coverage. 42 U.S.C. § 300gg-26.

35. The MHPAEA defines "mental health benefits" to mean "benefits with respect to services for mental health conditions, as defined under the terms of the plan and in accordance with applicable Federal and State law." 42 U.S.C. § 300gg-26(e)(4). A "mental health condition" must also "be defined to be consistent with generally recognized independent standards of current medical practice (for example, the most current version of the Diagnostic and Statistical Manual of Mental Disorders (DSM), the most current version of the ICD, or State guidelines)." 26 C.F.R. § 54.9812–1(a).

36. The Kentucky Autism Mandate defines ASD by reference to the DSM. K.R.S. 304.17A.141(3).

37. The Anthem Plan issued to Plaintiff and the Policies issued to Class Members define ASD by reference to the DSM. (*See*, paragraph 16.)

38. The Kentucky Mental Health Parity Act defines ASD by reference to the DSM. K.R.S. 304.17A-660(1).

39. The Kentucky Autism Mandate also defines ASD by reference to the DSM. Ky. Rev. Stat. §304.17A-142(3).

40. ASD is a "mental health condition" within the meaning of the MHPAEA, the Anthem Policies, and state law.

41. ABA therapy is specifically recognized as a treatment for ASD. Ky. Rev. Stat. §304.17A-141(11).

E. **The ACA prohibits discrimination based upon disability.**

42. Individuals with ASD suffer from a disability.

43. An insurer like Anthem does not provide mandated EHB "if its benefit design, or the implementation of its benefit design, discriminates based on an individual's . . . present or predicted disability. . . ." 45 C.F.R. § 156.125(a).

44. Anthem's plans discriminate against individuals with ASD by subjecting them to illegal and improper cumulative quantitative treatment limitations on medically necessary treatment.

F. **Defendant has illegally limited benefits for the treatment of ASD to Plaintiff's child.**

45. Anthem issues both group and individual health insurance policies which contain cumulative financial requirements, cumulative quantitative treatment limitations, or dollar limits on the provision of treatment for ASD. Anthem also administers self-insured ERISA plans by contracting with employers that put in place Anthem's policies containing illegal limitations. Collectively, these policies are referred to in this Complaint as the "Policies."

46. Anthem persists in imposing illegal cumulative financial requirements, cumulative quantitative treatment limitations, and dollar limits on the provision of treatment for ASD, despite the fact that it is aware that these limitations violate the MHPAEA. For example, Anthem's affiliate in New Hampshire -- Anthem Health Plans of New Hampshire, Inc. -- announced in a "Network Update" dated August 2014, that it was eliminating calendar year limits for ABA services: "In accordance with Federal Mental Health Parity regulations, beginning on July 1, 2014 for new and renewing large

and small group products, the limit of 360 hours per calendar year for ABA services was eliminated."

47.     Plaintiff's child, M.W., is a beneficiary under one of Anthem's Policies; namely, a large group insurance policy issued to Kentucky Bankers Association Health & Welfare Benefit Plan.

48.     Plaintiff have sought appropriate medical care for M.W. throughout the United States and, even, internationally.  Plaintiff has travelled with M.W. to Florida, California, Massachusetts, and Oregon for treatment.  Most recently, Plaintiff has obtained training for M.W.'s teacher in Oregon.

49.     Plaintiff is a life-long resident of Kentucky save for the time that her family resided in Atlanta, Georgia.  Plaintiff moved to Atlanta to obtain appropriate treatment for M.W.'s ASD.  That treatment was not available in Kentucky until the summer of 2009.

50.     Beginning in the summer of 2009, Plaintiff's family moved back to Kentucky when M.W. could be enrolled in the newly-opened Highlands Center for Autism in Prestonsburg, Kentucky.  At the time he began treatment at the Highlands Center, M.W. was 12 years old.

51.     The Highlands Center was founded by the Highlands Health System and is located on the Highlands Regional Medical Center campus.  The Highlands Center was established in consultation with the Cleveland Clinic Center for Autism.  The Highlands Center operates a year-round day treatment center for children with ASD.

52.     The Highlands Center utilizes ABA for the treatment of ASD. The director of the Highlands Center is a licensed clinical psychologist and a Board Certified

Behavior Analyst ("BCBA"). The professionals involved in treatment of the center's patients include physicians, clinical psychologists, nurses, and behavior therapists.

53. M.W. attended the Highlands Center until the spring of 2014. While at the Highlands Center M.W. received appropriate care and experienced significant progress in communication, cognition, and activities of daily living.

54. Plaintiff submitted claims for benefits seeking coverage for the cost of M.W.'s treatment at the Highlands Center.

55. Defendant paid small amounts of some claims for M.W.'s treatment at the Highlands Center but, because of the caps and limitations imposed by Anthem, the vast majority of the cost of that treatment has gone unreimbursed despite the dictates of federal and state law.

56. Since leaving the Highlands Center, Plaintiff has sought and obtained treatment for M.W.'s ASD. Anthem has continued to impose coverage limitations for M.W.'s treatment.

57. To date, Plaintiff has incurred tens of thousands of dollars in unreimbursed expenses for the medically necessary care of M.W.

G. **Exhaustion of administrative remedies by Class Members would be futile.**

58. Exhaustion of administrative remedies by Plaintiff and all Class Members would be futile.

59. The express language of Anthem's policies imposes cumulative quantitative treatment limitations which are prohibited by federal and state law. Anthem can be expected to follow the language of its plans resulting in persistent denials of coverage for Plaintiff and Class Members.

60. Requiring Plaintiff and Class Members to exhaust administrative remedies would be futile and would delay necessary medical treatment for the children of Plaintiff and Class Members.

## V. CLASS CERTIFICATION

61. Plaintiff brings this action on behalf of herself pursuant to F.R.Civ.P. 23 and a Class composed of the following individuals:

> All persons who are or have been insureds, participants in, or beneficiaries of a health insurance policy issued or administered by Anthem Health Plans of Kentucky, Inc., which contains cumulative financial requirements, cumulative quantitative treatment limitations, or dollar limits on the provision of treatment for Autism Spectrum Disorders and who have made a claim for, and have been denied coverage for, treatment for Autism Spectrum Disorders on the grounds that the policy's cumulative financial requirements, cumulative quantitative treatment limitations, or dollar limits had been exceeded.

62. For those, like Plaintiff, who are members of large group health plans, the MHPAEA became effective for plan years beginning on or after October 3, 2009. For those who are insured under small group and individual health plans, the MHPAEA became effective for plan or policy years beginning on or after July 1, 2014.

63. Members of the Class are so numerous that their joinder is impracticable.

64. Plaintiff is a member of the Class and will adequately protect the interests of the Class.

65. Plaintiff has retained counsel experienced in prosecuting class actions and complex insurance litigation and will adequately represent the interests of the Class.

66. There are questions of law and fact common to the Class.

67. The claims and defenses of Plaintiff are typical of the claims and defenses of the Class.

68. Defendants have acted or refused to act on grounds generally applicable to the Class as a whole rendering certification appropriate under Fed. R. Civ. P. 23(b)(2).

69. Core common questions of law and fact central to claims of the Class predominate over individual questions, rendering certification appropriate under Fed. R. Civ. P. 23(b)(3). Core common questions of law and fact include, among others, the following:

    a. Whether the cumulative financial requirements, cumulative quantitative treatment limitations, or dollar limits on the provision of treatment for Autism Spectrum Disorder in Defendant's policies are legal and enforceable.

    b. Whether Defendant has wrongfully denied benefits to Plaintiff and the Class.

    c. Whether Plaintiff and Class Members are entitled to recovery of the benefits wrongfully denied.

    d. Whether Plaintiff and Class Members are entitled to injunctive relief.

70. A class action is a superior method of adjudicating Class Members' claims as compared to other available methods for fairly and efficiently adjudicating this controversy. Class Members are unlikely to have any meaningful recourse against Defendants absent collective pursuit of their claims under Fed. R. Civ. P. 23.

## VI. CLAIMS

### A. COUNT I – Action against Defendant under 29 U.S.C. § 1132(A)(1)(B) for the recovery of benefits wrongfully denied.

71. Plaintiff incorporates the allegations in the preceding paragraphs as if fully rewritten herein.

72. Plaintiff and Class Members are or have been covered under Anthem's Policies purporting to provide health care coverage for covered medical expenses.

73. Plaintiff and Class Members have been subjected to the cumulative financial requirements, cumulative quantitative treatment limitations, or dollar limits on the provision of treatment for Autism Spectrum Disorders in violation of ERISA.

74. The ASD diagnosed in Plaintiff's child and Class Members is a "mental health condition" as defined in the Plan and under state and federal law.

75. The treatment obtained by Plaintiff and Class Members for those diagnosed with ASD, including ABA therapy, are appropriate treatments for a mental health condition.

76. ERISA Section 712 supersedes and preempts the application of the language of Anthem's Policies which purport to limit treatment of a mental health condition for Plaintiff and Class Members to a certain number of hours or other cumulative financial requirements, cumulative quantitative treatment limitations, or dollar limits. 29 U.S.C. §1185a.

77. ERISA Section 712 supersedes and preempts the application of the Kentucky Autism Mandate as a cap to ABA services provided to Plaintiff and Class Members. 29 U.S.C. §1185a.

78. Anthem cannot deny claims in any plan year for services solely on the basis that the quantity of treatment exceeds the amount stated in Anthem's Policies or that the claims exceed a financial requirement or cumulative dollar limit.

79. Plaintiff and Class Members are entitled to immediate payment of past due benefits, and they are also entitled to clarify and enforce their rights to payment of future benefits through the entry of an injunction.

80.    Plaintiff and Class Members are entitled to an award of attorneys' fees and costs pursuant to 29 U.S.C. §1132(g)(1).

WHEREFORE, Plaintiff and Class Members request judgment in their favor against Defendant in an amount to be determined, plus costs, interest, and attorneys fees, injunctive relief, and any other relief to which Plaintiff and the Class are entitled.

DATED this 10th day of November, 2014.            Respectfully Submitted,

/s/ Robert R. Sparks
Robert R. Sparks (83685)
STRAUSS TROY CO., LPA
150 East Fourth Street
Cincinnati, Ohio  45202
(513) 621-2120 Telephone
(513) 241-8259 Facsimile
rrsparks@strausstroy.com Email

3771435_1.doc

15