UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARGARET WILSON,  
individually and on behalf of a Class of persons similarly situated,

Plaintiffs

v.  Civil Action No. 3:14-cv-743

ANTHEM HEALTH PLANS OF KENTUCKY, INC.

Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Margaret Wilson ("Wilson") sues Defendant Anthem Health Plans of Kentucky ("Anthem") seeking relief for alleged violations of Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, *et seq*. ("ERISA") and the Mental Health Parity and Addiction Equity Act of 2008, 42 U.S.C.A. § 300gg-26 ("MHPAEA"). [DE 1 at 1]. Before the Court is Wilson's unopposed Motion for Preliminary Approval of Class Settlement, Approval of Notice to the Class, and Scheduling Final Fairness Hearing ("Motion"). [DE 76]. The matter is ripe. For the reasons below, the Motion is **GRANTED**.

## I. BACKGROUND

Wilson is the mother and legal guardian of M.W., a minor child with Autism Spectrum Disorder ("ASD"). [DE 1 at 2]. According to Wilson's complaint, "Autism cannot be cured, but it can be treated" and Applied Behavior Analysis ("ABA") is the "most common and recognized method" of treatment. *Id*. at 3. Wilson and her son are insured by Anthem. *Id*. at 2.

M.W. enrolled in the Highlands Center for Autism to receive ABA treatment. *Id*. at 10. Wilson submitted claims to Anthem "seeking coverage for the cost" of M.W.'s treatment. *Id*. at 11. Anthem "paid small amounts of some claims" but, because of coverage limitations, did not

reimburse most of the treatment costs. Wilson has continued to seek treatment for M.W.'s ASD but claims that "Anthem has continued to impose coverage limitations on it." *Id*. at 11. Wilson has spent "tens of thousands of dollars in unreimbursed expenses for the medically necessary care" of M.W. *Id*.

Wilson filed a Class Action Complaint, arguing that Anthem violated ERISA and MHPAEA by "routinely impos[ing] caps and limits on benefits under its health insurance policies for insureds seeking treatment for Autism Spectrum Disorders." *Id*. at 1. Because of Anthem's allegedly unlawful practices, Wilson sought relief for herself and on behalf of a class of similarly situated individuals.

The Court certified the class[1] requested by Wilson and named Robert R. Sparks and Strauss Troy Co., L.P.A., as class counsel. [DE 47 at 3157]. The parties then "engaged in discovery related to the merits of the class claims . . . includ[ing] depositions of Anthem's representatives as well as the exchange of reports of expert witnesses and the depositions of those individuals." [DE 76-1 at 3265].

The parties then negotiated a Class Action Settlement Agreement (the "Settlement") with help from Magistrate Judge King. The Settlement was "hotly contested by the parties" with "each party required to evaluate complex legal, factual, and procedural issues in evaluating their settlement position." [DE 76-1 at 3267]. During negotiations, the parties considered: Wilson's ability to prove the size of the class; the amount of damages the Court could award; the time,

---

[1] The Court defined the class as: "All persons who are or have been insureds, participants in, or beneficiaries of a health insurance policy issued or administered by Anthem Health Plans of Kentucky, Inc., which contains dollar or hour limits on the provision of treatment for Autism Spectrum Disorders and who have made a claim for, and have been denied coverage or reimbursement for Applied Behavior Analysis treatment for Autism Spectrum Disorders on the grounds that the policy's dollar or hour limits had been exceeded." [DE 47 at 3155].

2

expense, and difficulty of continued litigation and trial; and the likelihood of success on the merits and on appeal. *Id*.

> The compensatory terms of the Settlement are:
>
> On behalf of the class members involved in this action, Anthem has agreed to create a fund totaling $300,000. No part of this fund reverts to Anthem. The settlement fund is to be used to provide settlement to Class Members and pay attorney fees, costs, and incentive awards approved by the Court.
>
> The Net Settlement Fund will be distributed to Class Members. That fund is expected to total $175,000. Class Members who had claims denied by Anthem using the denial reason description "Benefit Maximum Met" or "Units exceed a utilization management authorization" shall receive a pro rata share of the Net Settlement Fund or a minimum payment of $250.00, whichever is greater. All other Class Members shall receive $250.00.
>
> Margaret Wilson, the Class Representative, will seek an award of $10,000. Class Counsel has agreed to apply to the Court for approval of attorneys (sic) fees and costs, which will not exceed $115,000.00. Anthem has agreed not to oppose a fee application which is in accord with the above referenced procedure. The comprehensive settlement agreement is attached and incorporated herein as Exhibit "A".
>
> Any funds remaining from uncashed settlement checks after 120 days following payments to Class Members shall be disbursed as a *cy pres* award to Families for the Effective Treatment of Autism (FEAT) of Louisville.

*Id.* at 3266

Wilson then filed her Motion [DE 76], attaching a Settlement Agreement [DE 76-2], a Notice of Class Action Settlement (the "Notice") [DE 76-2], and an Order Preliminarily Approving the Class Action Settlement Agreement, Scheduling Final Approval Hearing, and Directing Notice to Class [DE 76-3]. After review, this Court entered an Order [DE 80] granting Wilson leave to supplement the Motion to address two questions: 1) does the $175,000 in the net settlement fund wholly or partially compensate the class? and 2) why do some class members receive a pro rata share or a minimum payment of $250.00 and others receive only $250.00? Wilson sufficiently responded to the Court's questions in her Supplemental Memorandum in Support of Plaintiff's

3

Motion for Preliminary Approval of Class Settlement, Approval of Notice to Class, and Scheduling a Final Fairness Hearing (the "Supplemental Memorandum") [DE 82], and so the Court will now **GRANT** the Motion.

## II. STANDARD

Class action suits may be settled only with court approval. Fed. R. Civ. P. 23(e). Approval of a class action settlement involves two-stages: 1) "The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and 2) "If so, the final decision on approval is made after the hearing." *Ann. Manual Complex Lit*. (Fourth) § 13.14 (2019); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (referencing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc*., No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (quoting *Ann. Manual Complex Lit*. § 21.662 (4th ed.)). Courts apply a degree of scrutiny to proposed settlement agreements sufficient to avoid "rubber-stamp[ing]" a proposed settlement agreement, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised." *In re Inter-Op Hip Liab. Litig*., 204 F.R.D. 330, 338 (N.D. Ohio 2001).

To approve a proposed settlement, the court must determine whether it is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., L.L.C.*, 843 F.3d 1084, 1093 (6th Cir. 2016). Rule 23(e) provides the court with factors to consider when making this determination. The Advisory Committee, in amending Rule 23(e), did not intend to displace factors developed by the circuit

4

courts in deciding whether to approve a proposed settlement agreement, but rather to "focus the court . . . on the core concerns . . . that should guide" the court's determination. Federal R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This Court thus considers both the Rule 23(e) factors and the factors set forth by the Sixth Circuit. *See Peck v. Air Evac EMS, Inc.*, No. CV 5: 18-615-DCR, 2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019).

### III. DISCUSSION

**A. The Settlement is "Fair, Reasonable, and Adequate."**

Because the Court has already certified the class, appointed class counsel, and approved the class representative, [DE 47], its analysis here focuses on whether "giv[ing] notice is justified by the parties' showing that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."[2] Fed. R. Civ. P. 23(e)(1)(B). Because the parties' showing satisfies the Rule 23(e)(2) and Sixth Circuit factors, the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate."

**1. Analysis Under Rule 23(e)(2).**

Under the Rule 23(e)(2) factors, a settlement is "fair, reasonable, and adequate" if:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

---

[2] The Advisory Committee to Rule 23(e) notes: "If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified." Federal R. Civ. P. 23(e) advisory committee's note to 2018 amendment. Here, the settlement class is identical to the class the Court has certified.

> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### a. The class representative and class counsel have adequately represented the class.

The parties extensively litigated this matter through settlement, with Anthem "vigorously" opposing class certification. [DE 47 at 3127]. The parties "engaged in discovery related to the merits of class claims," including deposing Anthem's representatives and expert witnesses. [DE 76-1 at 3265]. There is no reason to think that, if the case continued to trial, the parties would stop litigating the case with the same intensity.

### b. The parties negotiated the proposal at arm's length.

Magistrate Judge King assisted the parties at the settlement conference and in their arm's-length negotiations. *Id.* The parties "exchanged written statements of their settlement positions and demands." *Id.* The "terms of the proposed settlement agreement were hotly contested by the parties" and required each party to "consider complex legal, factual, and procedural issues in evaluating their settlement position." *Id.* at 3267. The parties "did not discuss the amount of attorney fees or incentive awards for the Class Representatives until the parties reached agreement on the material terms of payments directly to class members." *Id.* at 3265.

### c. The relief provided for the class is adequate, despite 38% of it going to fees and costs.

The Settlement, which guarantees payment from Anthem, adequately compensates the class. Under the Settlement, class members do not have to complete and file a claim form. Instead, Anthem will directly make payments to all class members that can be identified and located. No part of the settlement fund reverts to Anthem. If the fund is not exhausted, any funds remaining will be disbursed *cy pres* to Families for the Effective Treatment of Autism (FEAT) of Louisville.

*Id*. at 3266. Additionally, the Settlement does not permit Anthem to withdraw from it if a "certain number or percentage of Class Members opt-out." *Id.* at 3267.

In its previous Order [DE 80], the Court was unable to determine whether the $175,000 in the net settlement adequately compensated the class because it was unclear how much money members of the class spent on ABA treatment. Wilson has now sufficiently addressed this issue. In her Supplemental Memorandum, Wilson explains that there are 46 class members, and that the "total amount billed by providers to Anthem for ABA therapy provided to those 46 class members is $335, 724.14." [DE 82 at 3319]. The Net Settlement Funds is $175,000, about 52% of the total amount billed to Anthem for the class members' ABA therapy. But the Net Settlement Fund is "fair, reasonable, and adequate" because, under the insurance policy:

> [I]t is important to note that the amount billed by providers is not the amount that any member of the class would be entitled to receive as reimbursement for ABA treatment even if there were no cap on the benefit . . . Had the claims been processed without application of any cap on ABA benefits, Plaintiff would have received less—perhaps significantly less—than 60% of Maximum Allowable Amount. As a result, the amount proposed to be distributed to class members – about 51% -- compares favorably to what the class member would have received even in the absence of a cap on ABA therapy.

*Id.* at 3319. The Court agrees and is satisfied with Wilson's explanation.

Class counsel seeks, Anthem does not object, and the Court preliminarily approves fees and costs totaling $115,000 (38% of the settlement fund). In determining whether a fee request is proper, the court may use either the percentage-of-the-fund ("Common Fund") method or the lodestar method. *Gascho v. Global Fitness Holdings*, L.L.C., 822 F.3d 269, 278-80 (6th Cir. 2016). But the court must articulate the "reasons for 'adopting a particular methodology and the factors considered in arriving at the fee.'" *Moulton v. U.S. Steel Corp*., 581 F.3d 344, 352 (6th Cir.2009) (quoting *Rawlings v. Prudential-Bache Properties*, Inc., 9 F.3d 513, 516 (6th Cir. 1993).

7

"The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, F.3d at 516.

Fee awards typically range from 20 to 50 percent of the common fund. *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd, sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *Déjà Vu*, 925 F.3d at 898 ("It is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award"); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (24% of common fund was reasonable); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *3 (W.D. Ky. May 4, 2015) (33% was reasonable); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (50% was reasonable).

Although 38% of the common fund is at the high end of what courts in this district have found to be reasonable, the Court preliminary approves fees and costs for no more than $115,000. That said, the Court requests that the parties provide additional information at the final fairness hearing about how the parties determined that $115,00 was reasonable for fees and costs, including the hours worked and billable rates for the plaintiff's attorneys on this case.

In Exhibit "A" of the Settlement, the parties explicitly disclaim any side agreements in the case: "This Settlement Agreement, including all exhibits, contains the entire agreement and understanding between the Parties concerning the subject matter hereof, and any and all prior oral or written agreements or understandings between the Parties related hereto are superseded." [DE 76-2 at 3289].

*d. The proposal treats class members equitably relative to each other.*

Finally, the Settlement treats class members equitably. In its previous Order, the Court noted that it was "unclear why some class members receive a pro rata share or a minimum payment of $250.00 and why others receive only $250.00." [DE 80 at 3316]. Wilson has now sufficiently explained why some class members receive a pro rata share or a minimum payment of $250.00 and why others receive only $250.00:

> Of the 46 class members, 19 have amounts billed for ABA therapy that were either less than $250 or were denied payment by Anthem for a reason other than "Benefit Maximum Met" or "Units exceed a utilization management authorization." Under the terms of section 4.2 of the Settlement Agreement, those 19 class members are entitled to a payment of $250 from the Net Settlement Fund . . . To account for the possibility that some of these denials were miscoded, class members with these other denial descriptions are entitled to receive a minimum of $250 from the Net Settlement Fund.

*Id.* at 3320-3321.

**2. Analysis Under the Sixth Circuit's Factors.**

The Sixth Circuit has articulated factors to help courts determine whether a settlement is "fair, reasonable, and adequate" for preliminary approval: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016) (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 641 (6th Cir. 2007).

First, "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d 521 (E.D. Ky. 2010) (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). Because Magistrate Judge King assisted the parties in their "hotly contested"

settlement negotiations, there is no reason to think that the parties colluded.

Second, during negotiations, the parties considered and discussed the complexity, expense, and likely duration of the litigation. [DE 76-1 at 3267]. This matter has been pending since 2014, and it may be years before the case goes to trial. The parties have already spent considerable time and expense on this case.

Third, the parties "engaged in discovery related to the merits of the class claims . . . includ[ing] depositions of Anthem's representatives as well as the exchange of reports of expert witnesses and the depositions of those individuals." *Id.* at 3265.

Fourth, "the most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Anthem's decision to settle necessarily suggests that Anthem weighed the risks and costs of going to trial and believed Wilson had some chance of prevailing on the merits. This factor supports settlement.

Fifth, the experienced attorneys on each side, after assessing the relative risks and benefits of litigation, believe that the settlement is fair and reasonable. *See UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D.Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."); [DE 76-1 at 3271].

Sixth, the reaction of absent class members does not yet weigh one way or the other in determining whether settlement is appropriate. At the pre-notice stage, the Court does not yet know how absent class members will respond.

Finally, the Court finds that settlement serves the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)); *accord Ehrheart v. Verizon Wireless*, No. 08–4323, 2010 WL 2365867, at *3 (3d Cir. June 15, 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."). There is no principled basis for not adhering to that policy here.

**B. The Proposed Settlement's Notice Materials Satisfy the Requirements of Rule 23**

Because this Court has granted preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The Court must direct notice under Rule 23(c)(2)(B), which requires that the notice must include in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice conveys that this is a class action alleging Anthem "has been applying dollar and hour limits on claims for reimbursement of Applied Behavioral Analysis which are not permitted by the law." [DE 76-2 at 3294]. It defines the certified class and explains the class claims, issues, and defenses. *Id.* at 3293. It notifies the class members that they may enter an appearance through an attorney. *Id.* at 3295. It explains the class members' options and the

11

manner for requesting exclusion. *Id*. at 3297. Although the Notice does not yet provide how much time a class member has to request exclusion, the Notice does include a blank "[Date]," which the Court will provide in its Order. Finally, it notes that if an individual chooses to do nothing, they are bound by the terms of the settlement. *Id*. at 3299.

## CONCLUSION

For these reasons, and being otherwise sufficiently advised, the Court **GRANTS** the Motion for Preliminary Approval of Class Settlement, Approval of Notice to the Class, and Scheduling Final Fairness Hearing. [DE 76].

The Court hereby **FINDS** and **ORDERS** as follows:

1. <u>Class Members</u>. On January 4, 2017, this Court certified, under Federal Rules of Civil Procedure 23(b)(3), the following Class [DE 47]:

   > All persons who are or have been insureds, participants in, or beneficiaries of a health insurance policy issued or administered by Anthem Health Plans of Kentucky, Inc., which contains dollar limits on the provision of treatment for Autism Spectrum Disorders and who have made a claim for, and have been denied coverage or reimbursement for Applied Behavior Analysis treatment for Autism Spectrum Disorders on the grounds that the policy's dollar limits had been exceeded.

2. <u>Class Representatives and Class Counsel</u>. On January 4, 2017, this Court appointed Plaintiff Margaret Wilson as Class Representative and the law firm of Strauss Troy Co. L.P.A. as Class Counsel. [DE 47].

3. <u>Preliminary Approval</u>. The settlement set forth in the Settlement Agreement between the Parties is preliminarily approved as fair, reasonable, adequate, within the range of possible approval, and in the best interests of the Class, subject to a hearing for final approval. The Court further preliminarily finds that the settlement provided for in the Settlement Agreement represents a fair, reasonable,

12

and adequate settlement to the Class as a whole. The proposed Settlement Agreement is sufficient to justify the issuance of notice of the settlement to the Class.

4. <u>Class Notice</u>. The Court approves the form and substance of the Notice of Class Action Settlement ("Notice"). The Notice is fair, reasonable, and adequate and the proposed form and method for notifying the Class of the settlements and their terms and conditions meet the requirements of Rule 23; constitute the best notice practicable under the circumstances of this case; and shall constitute due and sufficient notice to all persons and entities entitled to notice. In accordance with the Settlement Agreement, Class Counsel shall cause the Notice to be delivered to the Class Members within ten (10) of the entry of this Order by disseminating the Class Notice through the methods specified in section 5.03 and 5.04 of the Settlement Agreement.

5. <u>Exclusions</u>. Any Class Member who elects to "opt out" of the Settlement Agreement and be excluded from this case, the Class, and the terms of the Settlement Agreement must submit an exclusion request to Class Counsel by letter postmarked on or before March 13, 2020. To be effective, the exclusion request must provide all of the information identified in the Notice. All Class Members who timely submit an exclusion request shall be excluded from the settlement, shall have no rights with respect to the settlement and no interest in the settlement proceeds, and shall not be bound by the terms of the Settlement. All Class Members who do not timely submit an exclusion request shall be included in the settlement if finally approved by this Court, shall be bound by the judgment of this Court, and shall be bound by the terms

of the Settlement Agreement. Class Counsel shall file with the Court and serve a copy upon Anthem's Counsel of all timely and valid requests for exclusion or a list identifying those who submitted timely and valid requests for exclusion no later than thirty-five (35) days before the Fairness Hearing.

6. <u>Objections</u>. Any member of the Class who intends to object to this settlement must submit a written Objection to Class Counsel at the address noted on the Class Notice with a postmarked date on or before April 7, 2020. To be considered, the Objection must state: the Class Member's name, address, telephone number, signature, and reasons for objecting to the settlement. Any member of the Class who does not timely submit an Objection in this manner will be treated as not having filed a valid Objection and be deemed to have waived all objections. No member of the Class will be permitted to raise any objections at the Final Fairness Hearing that the Class Member did not raise in an Objection.

7. <u>Entry of Appearance</u>. Any Class Member who files and serves a written objection, as described above, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement, or to the award of Attorneys' Fees and Expenses or awards to the individual Plaintiff.

8. <u>Final Approval</u>. The Court shall conduct a Final Fairness Hearing regarding the proposed settlement (the "Final Fairness Hearing") on April 27, 2020 at 1:30 p.m. (EST) at the U.S. Courthouse, 601 W. Broadway, Louisville, KY, 40202. At the Final Fairness Hearing, the Court will consider whether the proposed settlement is fair, reasonable, and adequate and in the best interest of the Class and whether

the proposed settlement represents a fair and reasonable resolution of the claims made in the Lawsuit. The Court will consider whether the application of Class Counsel for an award of Attorneys' Fees and Expenses should be approved pursuant to Fed. R. Civ. P. 23(h) and whether the application of the named Plaintiff for an incentive award should be approved. The Court will also determine whether the Final Approval Order should be entered, thereby dismissing the claims against Defendant with prejudice and releasing the Settled Claims against the Defendant. The Final Fairness Hearing described herein may be postponed, adjourned, or continued by order of the Court without further notice to the Class Members. Attendance at the Final Fairness Hearing is not required and Class Members need not take any other action to indicate their approval of the proposed Settlement Agreement. Any Class Members who object to the settlement must submit an Objection pursuant to paragraph 6 above.

9. <u>Attorney's Fees and Awards</u>. The submissions of the Parties in support of the settlement, including Plaintiff's Counsels' application for Attorneys' Fees and Expenses and incentive awards, shall be filed with the Court no later than thirty-five (35) days prior to the Fairness Hearing and may be supplemented up to seven (7) days prior to the Fairness Hearing.

10. <u>Effect of Termination</u>. If the Court declines to enter the Final Approval Order as described herein then the settlement shall be null and void, shall have no further force and effect with respect to any Party in this case or any member of the Class, and neither the Settlement Agreement nor any of its terms shall be used in this case or any other case for any purpose.

11. In sum, the dates for performance are as follows:

| | |
|---|---|
| Class Notice **Mailing Initiated** By: | December 27, 2019<br><br>10 days from entry of the Court's preliminary approval order. |
| Class Notice **Mailing Completed** By: | January 28, 2020<br><br>Not later than ninety (90) days before the Fairness Hearing. |
| Deadline for Filing and Serving Requests for Exclusion: | March 13, 2020<br><br>Not later than forty-five (45) days before the Fairness Hearing. |
| Deadline for the filing of Motion for Final Approval and other papers in support of Settlement: | March 23, 2020<br><br>Not later than thirty-five (35) days before the Fairness Hearing. |
| Deadline for Filing and Serving Objections: | April 7, 2020<br><br>Not later than twenty (20) days before the Fairness Hearing. |
| The Fairness Hearing Shall Be Held on: | April 27, 2020 |

Cc: Counsel of record